

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br>    Recurrido<br><br><br>      v.<br><br><br><br>Zulma Díaz de León<br>    Peticionaria | Certiorari<br><br>2009 TSPR 142<br><br>176 DPR \_\_\_\_ |

Número del Caso: CC-2008-4


Fecha: 16 de septiembre de 2009


Tribunal de Apelaciones:

      Región Judicial de Humacao Panel VI

Juez Ponente:
          Hon. Germán J. Brau Ramírez


Abogados de la Parte Peticionaria:

        Lcdo. José A. Valle Brenes
        Lcdo. Alex O. Rosa Ambert

Oficina del Procurador General:

        Lcda. Maite D. Oronoz Rodríguez
        Procurador General Interina




Materia: Procedimiento criminal Recurso de Certiora ri para revisar determinación de causa probable para arrestar o acusar

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicaci ón oficial de las decisiones del Tribunal. Su distribu ción electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico
Recurrido

v.                          CC-2008-04

Zulma Díaz De León
Peticionaria

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES

En San Juan, Puerto Rico, a 16 de septiembre de 2009.

Este recurso nos presenta la oportunidad de reexaminar nuestra normativa sobre la utilización del recurso extraordinario de *certiorari* para revisar una determinación de causa probable para arrestar o para acusar. En específico, debemos determinar si la utilización del recurso de *certiorari* en sustitución de la vista en alzada para determinar causa probable para arrestar o acusar desvirtúa las características de este vehículo de revisión. Debido a la naturaleza limitada del recurso de *certiorari*, resolvemos que el Ministerio Público tiene que agotar la vista en alzada que proveen las Reglas 6(c) y 24(c) de Procedimiento Criminal, 34 L.P.R.A. Ap. II R. 6(c) y 24(c), antes de utilizar el

mecanismo de *certiorari* para revisar una determinación adversa de causa probable para arrestar o acusar.

En el caso ante nuestra consideración, el Ministerio Público tenía disponible la vista preliminar en alzada para procurar una determinación de causa probable. Sin embargo, decidió revisar la decisión de la vista original mediante el recurso extraordinario de *certiorari*. Ante este proceder, no tenemos la menor duda de que es necesario afinar nuestra normativa sobre este tipo de recurso y conformarla a lo antes expresado.

I

Por hechos ocurridos el 11 de agosto de 2007, el Ministerio Público presentó denuncias contra el oficial de la Policía de Puerto Rico, Javier Pagán Cruz por el delito de asesinato en primer grado, así como contra los oficiales policíacos Carlos Sustache Sustache y Zulma Díaz De León, estos últimos por el delito de asesinato en primer grado en la modalidad de cooperadores.

El 11 de agosto de 2007, estos oficiales intervinieron en la celebración de un quinceañero en el Municipio de Humacao. Como parte de los actos de celebración, el Sr. Miguel Cáceres Cruz realizaba gestiones dirigidas a asegurar el tránsito vehicular en el área. Como parte de la posterior intervención de los agentes del orden público, se suscitaron una serie de actos que culminaron con la muerte del señor Cáceres Cruz. El Ministerio Público inició una investigación

sobre los hechos acaecidos. Ésta condujo a la radicación de denuncias en contra de los tres agentes de la Policía.

El Tribunal de Primera Instancia, Sala de Humacao, encontró causa probable para arresto contra el oficial Pagán Cruz por el delito de asesinato en primer grado y contra la oficial Díaz De León por el delito de asesinato en primer grado en calidad de cooperadora. En la vista preliminar, el Tribunal de Primera Instancia no encontró causa probable para acusar a la oficial Díaz de León.

Por otra parte, el foro primario no encontró causa probable para arresto contra el oficial Sustache Sustache. Ante esto, el Ministerio Público solicitó una vista en alzada al amparo de la Regla 6(c), *supra*. Dicha vista se celebró el 28 de agosto de 2007. En la vista en alzada, el Tribunal de Primera Instancia reiteró que no había causa probable para arrestar al oficial Sustache Sustache. Entonces, el 27 de septiembre de 2007, el Ministerio Público presentó ante el Tribunal de Apelaciones un recurso de *certiorari* sobre la determinación de no causa probable para arresto en alzada contra el oficial Sustache Sustache.

En el caso de la oficial Díaz De León, el Ministerio Público solicitó al foro primario la celebración de una vista preliminar en alzada, la cual fue señalada para el 9 de octubre de 2007. Sin embargo,

el 5 de octubre de 2007, esto es, cuatro días antes de la fecha señalada para efectuar la vista preliminar en alzada, el Ministerio Público presentó un recurso de *certiorari* sobre la determinación de no causa probable para acusar a la oficial Díaz De León.

El 8 de octubre de 2007, el foro apelativo intermedio acogió ambos recursos de *certiorari* y los consolidó. Posteriormente, el 29 de noviembre de 2007, el Tribunal de Apelaciones revocó las determinaciones de no causa probable para arrestar y acusar a los oficiales. En su sentencia, el foro apelativo intermedio concluyó que había causa probable para arrestar al oficial Sustache Sustache y para acusar a la oficial Díaz de León por los delitos de asesinato en primer grado y agresión, ambos en modalidad de cooperadores, así como por el delito de encubrimiento.

Insatisfechos con esta determinación, los oficiales Sustache Sustache y Díaz De León nos solicitaron por separado la revisión de la sentencia emitida por el Tribunal de Apelaciones. En este recurso, este emitió una orden el 18 de abril de 2008, para que el Ministerio Público mostrara causa por la cual no se debía expedir el auto y revocar la sentencia del Tribunal de Apelaciones. En lo pertinente, la peticionaria Díaz De León plantea que el tribunal no tiene jurisdicción para revisar la determinación de no causa probable para acusar.

En el recurso número CC-2007-1181, el peticionario Sustache Sustache esgrimió similares señalamientos en cuanto a la determinación de no causa probable para arrestar. En Pueblo v. Sustache Sustache, Opinión de 9 de julio de 2009, 2009 T.S.P.R. 119, 2009 J.T.S. 122, 176 D.P.R. ___ (2009), confirmamos las determinaciones de causa probable para arresto contra el oficial Sustache Susatache en cuanto a los delitos de agresión y asesinato en primer grado en modalidad de cooperador pero revocamos la determinación de causa probable por el delito de encubrimiento por haberse hecho en la etapa apelativa.

Debidamente sometidos los escritos de las partes, procedemos a resolver la controversia planteada en el caso contra la oficial Díaz De León.

## II-A

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una decisión de un tribunal inferior. Art. 670 del Código de Enjuiciamiento Civil de 1933, hoy conocido como Ley de Recursos Extraordinarios, 32 L.P.R.A. sec. 3491. El recurso tiene su origen en el *common law* británico. Desde sus inicios, la Corte del Rey (*King´s Bench*) limitó el recurso a asuntos de gravedad y gran importancia. E.C. Surrency, History of The Federal Courts, 1ra ed., U.S., Oceana Publications, Inc., 1987, pág. 246.

De Inglaterra se incorporó a las colonias americanas donde siguió un curso similar a la figura británica. Era también el remedio extraordinario y discrecional por el cual se traía a la atención del tribunal apelativo para determinar, de la faz del expediente, si el tribunal de instancia se había excedido en el ejercicio de su jurisdicción o no había actuado conforme a los procedimientos de la ley. [D. Rivé Rivera, Recursos extraordinarios, 2da ed. Rev., San Juan, Programa de Educación Jurídica Continua de la Facultad de Derecho de la Universidad Interamericana de Puerto Rico, 1996, pág. 201].

Esta figura llegó a enriquecer el derecho puertorriqueño mediante la ley para autorizar autos de *certiorari*, de 10 de marzo de 1904, con la misma rigidez que le caracterizaba en los Estados Unidos. Ibíd. Para ese entonces, el auto concedía un derecho de revisión limitado a determinar la falta de jurisdicción del tribunal recurrido o errores de procedimiento. Fernández v. Corte, 6 D.P.R. 202 (1904). Esa fue la regla hasta que en Pérez v. Tribunal de Distrito, 69 D.P.R. 4 (1948), resolvimos que el *certiorari* procede "para revisar errores cometidos por las cortes inferiores no importa la naturaleza del error imputado." Id. a la pág. 19. En general, véanse, H.A. Sánchez Martínez, Práctica jurídica de Puerto Rico: Derecho procesal apelativo, Lexis-Nexis de Puerto Rico, Inc., 2001, Sec. 1801, pág. 385 y ss; A.R. Calderón, Jr. & D. Rivé Rivera, Procedimientos apelativos civiles, Ed. Colegio de Abogados, San Juan, 1978, pág. 103.

Esa amplitud del recurso moderno de *certiorari* en esta jurisdicción no significa, empero, que el auto sea equivalente a una apelación. El *certiorari* sigue siendo un recurso discrecional y los tribunales debemos utilizarlo con cautela y por razones de peso. Pérez v. Tribunal de Distrito, supra. Éste procede "cuando no existe un recurso de apelación o cualquier otro recurso ordinario que proteja eficaz y rápidamente los derechos del peticionario." Pueblo v. Tribunal Superior, 81 D.P.R. 763, 767 (1960). Este recurso, por ser extraordinario, debe ser limitado a aquellos casos en que la ley no provee un remedio adecuado para corregir el error señalado.

Así pues, en Pueblo v. Cruz Justiniano, 116 D.P.R. 28 (1984), resolvimos que aunque la determinación en los méritos en una vista preliminar en alzada sobre la existencia de causa probable para acusar no es revisable, cualquier otra determinación de derecho sí lo es mediante la expedición de un auto de *certiorari*. No existe otro remedio legal disponible. Véanse, además, Pueblo en interés del menor K.J.S.R., Opinión de 6 de noviembre de 2007, 2007 T.S.P.R. 194, 2007 J.T.S. 199, 172 D.P.R. ___ (2007); Pueblo v. Rivera Alicea, 150 D.P.R. 495 (2000). La misma norma aplica a las determinaciones de causa probable para arresto al amparo de la Regla 6 de Procedimiento Criminal, supra. Pueblo v. Colón Mendoza, 149 D.P.R. 630 (1999). Lo contrario

habría dejado sin remedio al Pueblo para encausar a un imputado en muchos casos, no por falta de causa probable sino por una interpretación equivocada del derecho aplicable.

La vista inicial o en alzada para determinar causa probable para arrestar o para acusar provee al fiscal la oportunidad de presentar toda la evidencia que tenga para establecer la probabilidad de que la persona imputada cometió el delito por el cual está siendo encausada o cualquier otro que surja de la prueba. Pueblo v. Rivera Martell, Opinión de 22 de abril de 2008, 2008 T.S.P.R. 64, 2008 J.T.S. 84, 173 D.P.R. ___ (2008); Pueblo v. North Caribbean, 162 D.P.R. 374 (2004). En cambio, el *certiorari* está limitado exclusivamente a revisar en el expediente si el Tribunal de Primera Instancia cometió un error de derecho al determinar causa o ausencia de ésta. Pueblo en interés del menor K.J.S.R., supra; Pueblo v. Rivera Alicea, supra; Pueblo v. Aponte, supra; Pueblo v. Colón Mendoza, supra. La vista en alzada no es una revisión judicial ni una apelación de la vista inicial. Pueblo v. Cruz Justiniano, supra a la pág. 30; Pueblo v. Tribunal Superior, 96 D.P.R. 237 (1968). Por el contrario, el *certiorari* sí es una revisión judicial limitada y no una segunda vista *de novo* en alzada.

Estas características enmarcan las importantes pero diferentes funciones de ambos recursos que nos llevan al

punto al que hoy arribamos. Atender un caso por el mecanismo de *certiorari* extraordinario antes de agotar los remedios que proveen las Reglas de Procedimiento Criminal y sin contar con razones de gran peso, no es cónsono con las características del recurso.

B

Contra la peticionaria Díaz De León se encontró causa en la vista de Regla 6 pero en vista preliminar no se encontró causa probable para acusar por el delito de asesinato en primer grado. Ante esta situación, el Ministerio Público tenía disponible la vista en alzada que provee la Regla 24(c) de Procedimiento Criminal, supra. Conforme a la regla, la Fiscalía solicitó que se celebrara una vista preliminar en alzada para acusar a Díaz De León. Esa vista fue señalada para el 9 de octubre de 2007.

No obstante, el 5 de octubre de 2007, cuatro días antes de la fecha señalada para la vista preliminar en alzada, el Ministerio Público decidió acudir al Tribunal de Apelaciones mediante *certiorari*. No hay explicación en el récord de la razón que motivó al Ministerio Público a abandonar el procedimiento de vista preliminar en alzada que la misma fiscalía inició.

El 8 de octubre de 2007, un día antes que la fecha señalada para la vista preliminar en alzada, el Tribunal de Apelaciones (Hons. Brau Ramírez, Cortés Trigo y García García, Jueces) consolidó ambos recursos de

*certiorari* y emitió una orden para que los recurridos mostraran causa por la cual no se debía expedir el auto y revocar al Tribunal de Primera Instancia. El 29 de noviembre de 2007, el Tribunal de Apelaciones (Hon. Brau Ramírez, Juez ponente) emitió sentencia en esos términos.

En el pasado, este Tribunal ha permitido al Ministerio Público recurrir por *certiorari* en lugar de acudir a una vista preliminar en alzada o a una vista de causa para arresto en alzada. Pueblo v. Aponte, 167 D.P.R. 578 (2006); Pueblo v. Colón Mendoza, 149 D.P.R. 630 (1999). Esta norma no es consistente con el principio básico de que el *certiorari* no procede cuando existe otro recurso legal que protege rápida y eficazmente los derechos de la parte peticionaria, que aquí era el Ministerio Público. Pueblo v. Tribunal Superior, supra.

En el caso de la acusada-peticionaria Díaz De León, no tenemos duda de que la vista en alzada le pudo proveer al fiscal en un día el remedio que tardó 55 días en obtener en el Tribunal de Apelaciones. El mecanismo provisto en la Regla 24(c) de Procedimiento Criminal, supra, ofrecía al fiscal un vehículo procesal eficiente para exponer su contención. Por lo tanto, nos resulta claro que en esta etapa de los procedimientos el recurso extraordinario de *certiorari* no es el único remedio en ley que tiene el Ministerio Público para lograr su fin,

a saber, una determinación de causa probable para acusar.

En síntesis, la utilización del recurso de *certiorari* en estas circunstancias no es consistente con el carácter extraordinario de esta figura procesal. Por ese fundamento, revocamos la vigencia como precedente de nuestras decisiones en Pueblo v. Aponte, supra, y Pueblo v. Colón Mendoza, supra, en la medida que permiten obviar la vista en alzada antes de acudir por *certiorari* al Tribunal de Apelaciones. Esas decisiones no son cónsonas con las de otros recursos donde se reconoció el derecho que asiste al Ministerio Público de utilizar el mecanismo procesal extraordinario del *certiorari* después de agotar el remedio de la vista en alzada. Pueblo en interés del menor K.J.S.R., supra; Pueblo v. Rivera Alicea, supra; Pueblo v. Cruz Justiniano, supra.

Al así proceder, no obviamos que la doctrina del *stare decisis* establece que, como norma general, un tribunal debe seguir sus decisiones en casos posteriores. Esta doctrina está fundamentada en la necesidad de lograr estabilidad y certidumbre legal. "[S]in embargo esa doctrina no llega al extremo de declarar que la opinión de un tribunal tenga el alcance de un dogma que debe seguirse ciegamente aun cuando el tribunal se convenza posteriormente [de] que su decisión anterior es errónea." Am. Railroad Co. v. Comisión Industrial, 61 D.P.R. 314, 326 (1943).

No debemos olvidar que "el propósito inspirador de la doctrina del *stare decisis* es lograr la estabilidad y certidumbre en la ley, mas nunca perpetuar errores." Ibíd. Véase, además, Opinión disidente de la Juez Asociada señora RODRÍGUEZ RODRÍGUEZ en Pueblo v. Pérez Pou, 2009 T.S.P.R. 5, 2009 J.T.S 8, 175 D.P.R. ___ (2009). Se permite así el desarrollo consistente de principios legales pero no se impide la corrección de errores. Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996). En fin, "[l]a doctrina de *stare decisis* es, por supuesto, 'esencial para el respeto debido a los dictámenes del Tribunal y para la estabilidad del derecho' pero no nos obliga a seguir una decisión anterior cuando su razonamiento ya no resiste un 'análisis cuidadoso'." Arizona v. Gant, 129 S.Ct. 1710, 1722, __ U.S. __ (2009) (traducción nuestra; cita omitida). ("*The doctrine of* stare decisis *is of course 'essential to the respect accorded to the judgments of the Court and to the stability of the law,' but it does not compel us to follow a past decision when its rationale no longer withstands 'careful analysis.'* ")

Precisamente porque el proceso judicial para decidir es dinámico, existe el mecanismo para descartar un precedente en orden de asegurar el funcionamiento adecuado del derecho. E. Maltz, The Nature of Precedent, 66 N.C.L. Rev. 367 (1988). "Al revocar casos anteriores que son inconsistentes con la actitud predominante, el

tribunal puede eliminar la confusión en el derecho." Id. a la pág. 383 (traducción nuestra). ("*By overrruling earlier cases inconsistent with this dominant approach, the court can eliminate confusion in the law.*")

Por eso, para revocar una norma es preciso ponderar los siguientes factores: "(1) si la decisión anterior era claramente errónea; (2) si sus efectos sobre el resto del ordenamiento son adversos; y (3) si la cantidad de personas que confiaron en la misma es limitada." Pueblo v. Camacho Delgado, Opinión de 27 de octubre de 2008, 2008 T.S.P.R. 174 n. 4, 2008 J.T.S. 193, pág. 195 n.4, 175 D.P.R. ___, ___ n.4 (2008).

Aclarado esto, resolvemos que bajo las circunstancias presentes en este recurso, el Ministerio Público abusó del mecanismo de *certiorari*, ya que tenía un remedio en ley que no utilizó. Ese remedio, la vista preliminar en alzada, era superior al recurso de *certiorari*, ya que le permitía al fiscal presentar toda la prueba a su haber en una vista *de novo* en lugar de depender de una revisión del expediente limitada a determinar si el tribunal instructor de causa cometió un error exclusivamente de derecho.

Nos resulta evidente la necesidad de vetar la práctica que avalaba la norma anterior, por su clara inconsistencia con la esencia limitada del recurso extraordinario de *certiorari*. El Ministerio Público sigue teniendo la oportunidad de una vista en alzada y

una revisión en *certiorari* del resultado de esa vista, limitada a un error de derecho. Esta decisión no afecta adversamente al Ministerio Público pues siguen a su disposición los vehículos procesales para revisar una determinación de causa probable para arrestar o acusar. El Ministerio Público es quien viene llamado a seguir la norma aquí pautada, la cual no perjudica trascendentalmente su facultad para encausar personas por la comisión de delitos.

Así pues, en esta etapa de los procedimientos, es innecesario discutir si existe causa probable para acusar a la peticionaria Díaz De León. El Ministerio Público acudió a destiempo al Tribunal de Apelaciones ya que todavía contaba con el mecanismo provisto en la Regla 24(c) de Procedimiento Criminal, supra.

Por lo tanto, procede devolver el caso al Tribunal de Primera Instancia, Sala de Humacao, para que se celebre la vista preliminar en alzada provista en nuestro ordenamiento jurídico y que el Ministerio Público solicitó oportunamente. Es al foro primario al que le corresponde determinar si hay causa probable para acusar a la peticionaria por algún delito.

IV

Por los fundamentos señalados, se revoca la decisión del Tribunal de Apelaciones, Región Judicial de Humacao, y se devuelve el caso de la peticionaria Zulma Díaz de León al Tribunal de Primera Instancia, Sala de

Humacao, para la celebración de la vista preliminar en alzada que la Fiscalía solicitó oportunamente. Los procedimientos continuarán de forma compatible con lo aquí resuelto.


                                    RAFAEL L. MARTÍNEZ TORRES
                                          Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico
        Recurrido

              v.

                                    CC-2008-04

    Zulma Díaz de León
        Peticionario

*SENTENCIA*

En San Juan, Puerto Rico, a 16 de septiembre de 2009.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se revoca la decisión del Tribunal de Apelaciones, Región Judicial de Humacao, y se devuelve el caso de la peticionaria Zulma Díaz de León al Tribunal de Primera Instancia, Sala de Humacao, para la celebración de la vista preliminar en alzada que la Fiscalía solicitó oportunamente. Los procedimientos continuarán de forma compatible con lo aquí resuelto.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal. La Juez Asociada señora Rodríguez Rodríguez concurre y disiente con Opinión escrita. El Juez Presidente señor Hernández Denton disiente con Opinión escrita a la que se une la Jueza Asociada señora Fiol Matta.

                    Aida Ileana Oquendo Graulau
                    Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

       v.

Zulma Díaz De León                 CC-2008-04

    Peticionaria

Opinión Concurrente y Disidente emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 16 de septiembre de 2009

Concurro con el resultado de la decisión emitida por el Tribunal en el día de hoy --devolver el caso ante nuestra consideración al Tribunal de Primera Instancia para la celebración de la vista de causa para acusar en alzada-- por las razones expuestas en mi Opinión Disidente en *Pueblo v. Sustache Sustache*, res. el 9 de julio de 2009, 2009 TSPR 119, 176 D.P.R. \_\_\_\_\_ (2009). Entiendo que en este caso, igual que en *Sustache Sustache*, se trata de una determinación de no causa probable en los méritos, no revisable vía *certiorari*, por lo que no tenemos jurisdicción para atenderlo.

Disiento, no obstante, de la desacertada norma creada por esta Curia, pues considero que ésta es el producto de una interpretación innecesariamente restrictiva --además de errónea-- de la procedencia del recurso de *certiorari* para la revisión de resoluciones, la cual no guarda relación con la Ley de la Judicatura de 2003 y nuestra jurisprudencia interpretativa de dicho recurso.

Este caso ejemplifica el menosprecio a las normas de Derecho puertorriqueño y a la forja de ese Derecho autóctono. Con su actuación, la mayoría continúa, de manera sistemática, su desmantelamiento. La proclividad de la mayoría a la revisión de normas establecidas, al margen de los criterios aceptables para tal proceder[1], sólo abona a la inestabilidad jurídica y nos invita a cuestionarnos si el proclamado rechazo al "activismo judicial", como antítesis de la función estricta de aplicar el "texto claro de la ley", constituye sólo una cuestión de retórica más que de teoría adjudicativa.

I

El Tribunal resuelve que el Ministerio Público acudió a "destiempo" al foro intermedio a revisar el "no causa" en vista preliminar en contra de la señora Zulma Díaz de León, pues tenía a su haber la solicitud de una vista de causa probable para acusar en alzada, según codificada en la Regla 24(c) de Procedimiento Criminal, 34 L.P.R.A. Ap.

---

[1] Propensión, dicho sea de paso, que ya habíamos adelantado hace sólo unos meses. *Véase*, *Vázquez Vélez v. Caro Moreno*, res. 1 de mayo de 2009, 2009 TSPR 70, 176 D.P.R. ___ (2009), (Rodríguez Rodríguez, J., voto disidente).

II R 24(c). Entiende la mayoría que el *certiorari* es un recurso extraordinario, que procede únicamente cuando no haya remedio adecuado en ley. Por lo tanto, sostiene que el Ministerio Público debía agotar el alegado remedio adecuado en ley, la vista en alzada, antes de acudir en *certiorari* al Tribunal de Apelaciones. En apoyo a este resultado formalista, el Tribunal cita a *Pérez v. Tribunal Superior*, 69 D.P.R. 4 (1948) y *Pueblo v. Tribunal Superior*, 81 D.P.R. 763 (1960), ambos casos previos, por más de cuarenta (40) años, a la Ley de la Judicatura de 2003. No tiene razón la mayoría.

La Ley de la Judicatura de 2003, Ley núm. 201 de 22 de agosto de 2003, 4 L.P.R.A. secs. 24-25r, estableció en Puerto Rico la coexistencia de tres tribunales y la competencia de cada uno de éstos. En relación con el Tribunal de Apelaciones, estableció que sería el foro intermedio con el propósito "de proveer a los ciudadanos de un foro apelativo mediante el cual un panel de no menos de tres (3) jueces revisará, como cuestión de derecho, . . . de forma discrecional, las decisiones finales de los organismos y agencias administrativas y **cualquier otra resolución u orden dictada por el Tribunal de Primera Instancia**". Art. 4.002 de la Ley de la Judicatura de 2003, 4 L.P.R.A. sec. 24u. Igualmente se establece en dicha ley que el Tribunal de Apelaciones conocerá mediante "auto de *Certiorari* expedido a su discreción, de cualquier resolución u orden dictada por el Tribunal de Primera

Instancia". Art. 4.006 (b) de la Ley de la Judicatura de 2003, 4 L.P.R.A. sec. 24y.

Al establecer que el *certiorari* será utilizado para revisar **cualquier resolución u orden del Tribunal de Primera Instancia de manera discrecional**, el legislador cambió la naturaleza "extraordinaria" que podía haber tenido en un principio dicho recurso y lo convirtió en el recurso de revisión de toda determinación del foro de instancia que no sea una sentencia. De esa manera, el legislador continuó la tendencia liberadora del recurso de *certiorari* que había comenzado este Tribunal en *Pérez v. Tribunal Superior*, *supra*. Dicho estatuto no exige de forma alguna la inexistencia de cualquier otro remedio adecuado en ley para que proceda su expedición.[2]

Es por esto que es posible la revisión de resoluciones y determinaciones interlocutorias del Tribunal de Primera Instancia sin necesidad de esperar por el que se tenga una sentencia final de dicho foro. De ser un recurso "extraordinario" como lo afirma el Tribunal, entonces los litigantes tendrían que esperar a que se dictara sentencia final en todos los casos y apelar dicha sentencia, pues el recurso de apelación sería un remedio disponible en ley para impugnar todos los alegados errores del foro de instancia, tanto procesales como sustantivos.

---

[2] En este sentido, la naturaleza del *certiorari* dista de la del recurso de *injunction*, el cual sí requiere que no exista un remedio adecuado en ley para su expedición. *Véase* art. 675 del Código de Enjuiciamiento Civil hoy Ley de Recursos Extraordinarios, 32 L.P.R.A. secs. 3521-33. *Véase también P.R.T.C. v. Tribunal Superior*, 103 D.P.R. 200 (1975).

Así era que se utilizaba el recurso hace sesenta (60) años. *Véase* D. Rivé Rivera, *Recursos Extraordinarios*, Segunda Edición, San Juan, Programa de Educación Jurídica Continua Facultad de Derecho Universidad Interamericana de Puerto Rico, 1996, págs. 201-02. Dicho sistema, no obstante, no es el que se concibió a través de la Ley de la Judicatura de 2003.

Las determinaciones de los jueces de instancia en las vistas de causa probable para arresto o para acusar son resoluciones del Tribunal de Primera Instancia. En principio, bajo la Ley de la Judicatura de 2003, serían todas revisables mediante *certiorari* ante el Tribunal de Apelaciones. Es por esto que al Profesor Chiesa le parece "dudosa" lo que ha sido nuestra normativa en relación con la revisión de determinaciones de causa o no causa para arresto o para vista preliminar, la cual había sido clara hasta el día de hoy. *Véase* E.L. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Colombia, Editorial Forum, 1993, Vol. III, sec. 21.7, pág. 46. En el caso del acusado, éste no tiene a su haber el recurso de *certiorari* para revisar una determinación de causa, pues dicha determinación puede ser impugnada luego de presentada la acusación, mediante moción al amparo de la regla 64(p) de Procedimiento Criminal. *Pueblo v. Jiménez Cruz*, 145 D.P.R. 803, 813 (1998). Por otra parte, el Ministerio Público no tiene disponible el recurso de *certiorari* para la revisión de una determinación de no causa para arresto o para acusar, salvo que se trate de la

revisión de una cuestión estrictamente de derecho, desvinculada de la prueba presentada para la comisión del delito.[3] *Pueblo en interés del menor KJSR*, 2007 T.S.P.R. 194, 172 D.P.R. ____ (2007); *Pueblo v. Aponte Nolasco*, 167 D.P.R. 578 (2006). La razón de esta normativa es clara; en esa etapa todavía no existen hechos probados en un juicio por lo que la intervención de un tribunal apelativo afectaría el proceso llevado a cabo en el foro de instancia, además de que los procesos criminales deben llevar un ordenado y rápido curso y permitir la revisión de estas determinaciones desvirtuaría dicho proceso. *Pueblo v. Opio Opio*, 104 D.P.R. 165, 171 (1975).

Empero, un error estrictamente de derecho, desvinculado de la prueba presentada, puede surgir en la vista de causa probable original o en la alzada. Soy del criterio que es errado restringirle la potestad al Ministerio Público de acudir en revisión vía *certiorari* de una determinación de no causa por una cuestión de estricto derecho, sencillamente porque ésta se hizo en la vista original y no en la vista en alzada, como hace hoy la mayoría. Como hemos dicho anteriormente, la vista en alzada "no es un trámite apelativo de la primera vista, sino un procedimiento independiente, separado y distinto donde puede presentarse la misma u otra prueba con el propósito de que el Pueblo pueda conseguir una determinación favorable de causa probable". *Pueblo v.*

---

[3] Luego de *Pueblo v. Sustache Sustache*, res. el 9 de julio de 2009, 2009 TSPR 119, 176 D.P.R. _____ (2009), son también revisables las determinaciones de no causa por cuestiones *esencialmente* de derecho.

*Ríos Alonso*, 149 D.P.R. 761, 769 (1985). Por lo tanto, ese mecanismo no es un remedio adecuado para corregir un error de estricto derecho desvinculado de la prueba que haya ocurrido en la vista original, pues la vista en alzada es una vista *de novo*. El Ministerio Público estaría impedido en esa vista de cuestionar el error de estricto derecho cometido en la vista original.

El fin del Ministerio Público en acudir vía *certiorari* a un tribunal de mayor jerarquía para revisar una determinación de no causa para arresto o para acusar por un error de estricto derecho puede que no sea únicamente obtener una determinación de causa probable para acusar en el caso específico, como parece presumir la mayoría. La controversia de estricto derecho que se revisa puede estar latente en otra infinidad de casos, por lo que puede existir un fin ulterior de solicitar una revisión a un tribunal de mayor jerarquía; el que se aclare o se paute un punto de estricto derecho no resuelto anteriormente. Mediante la solución del Tribunal del día de hoy, es posible que ese fin ulterior se vea tronchado, al obligar al Ministerio Público a acudir a una vista en alzada en la cual, quizás en el caso específico se consiga una determinación de causa, pero entonces el asunto de estricto derecho no sea atendido y resuelto con premura. Por esto, soy del criterio que debe quedar en la sana discreción del Ministerio Público acudir en *certiorari* al foro intermedio o, por el contrario, acudir ante otro juez de instancia para una nueva determinación. Con esta nueva

norma, el Tribunal le resta una oportunidad al Ministerio Público para poder presentar su caso, pues tendrá siempre que agotar la vista de causa en alzada que le brinda el ordenamiento, antes de poder cuestionar una determinación errónea de estricto derecho ante un tribunal de mayor jerarquía.

Por otro lado, el lenguaje de la opinión mayoritaria es más peligroso de lo que aparenta y *de facto* revoca más normativa de este Tribunal de lo que hace *de jure*. La Opinión del Tribunal indica que siempre es revisable una determinación de no causa para arresto o para acusar cuando exista una "interpretación equivocada del derecho" o cuando se trate de un error de derecho. Este lenguaje va más allá que las expresiones del Tribunal en *Sustache Sustache,* en relación con las instancias en que el Ministerio Público podrá acudir en *certiorari* al foro intermedio. Ya no se trata de que sean determinaciones de no causa basadas en cuestiones estrictamente de derecho desvinculadas de la prueba presentada, o que se traten de cuestiones esencialmente de derecho, sino que ahora es suficiente que sea una "interpretación equivocada del derecho" o un simple "error de derecho". Op. Mayoritaria págs. 7 y 13. Con lo cual, la mayoría que hace apenas unos días avaló el estándar de revisión de *Sustache Sustache*, hoy lo modifica.

Así pues, por un lado, el Tribunal le restringe la oportunidad al Ministerio Público de acudir en *certiorari* al foro intermedio cuando se le determina "no causa" por

una cuestión de estricto derecho en una vista original, pero por el otro relaja increíblemente el estándar de revisión de dichas determinaciones. Las consecuencias que estos innecesarios cambios a la normativa procesal penal conllevarán --creados por *fíat* judicial-- estoy segura que son insospechados, inclusive, para aquellos que los establecieron.

## II

En el caso que tenemos ante nuestra consideración, la señora Zulma Díaz de León solicita la revocación de la sentencia del Tribunal de Apelaciones que le encontró causa probable para acusar en grado de cooperadora en el delito de asesinato en primer grado y en grado de autora en los delitos de agresión y encubrimiento. Por ser del criterio que el foro intermedio carecía de jurisdicción para atender el recurso de *certiorari* presentado por el Ministerio Público por tratarse de una determinación de no causa en los méritos, concurro con el resultado al que llega la mayoría. Por las razones antes expuestas, no obstante, disiento de la normativa establecida en relación con el recurso de *certiorari*.


                              Anabelle Rodríguez Rodríguez
                                    Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        v.                                 CC-2008-4

        Certiorari

  Zulma Díaz de León

    Peticionaria

Opinión Disidente emitida por el Juez Presidente SEÑOR HERNÁNDEZ DENTON, a la cual se une la Jueza Asociada SEÑORA FIOL MATTA

San Juan, Puerto Rico, a 16 de septiembre de 2009.

En este caso, una mayoría de los miembros de este Tribunal se ampara en un tecnicismo procesal que habíamos superado hace más de medio siglo para revocar la determinación de causa probable para acusar a la ex Agte. Zulma Díaz de León por el delito de asesinato en primer grado y el delito menor incluido de agresión, ambos en grado de cooperadora. Ello a pesar de que hace apenas unas semanas confirmamos la determinación de causa probable para el arresto de su ex compañero de la Policía, el Sr. Carlos Sustache Sustache, por los mismos delitos y bajo la óptica precisa de la misma prueba, la cual apuntaba razonablemente a la cooperación de ambos con la comisión del asesinato

del Sr. Miguel Cáceres Cruz a manos de otro compañero de la Policía, el Sr. Javier Pagán Cruz. Véase <u>Pueblo v. Sustache Sustache</u>, 2009 T.S.P.R. 119, res. 9 de julio de 2009.

En este sentido, la Opinión del Tribunal no se fundamenta en los méritos de la controversia sobre las figuras del cooperador o de la comisión por omisión que surgen del Código Penal de 2004, 33 L.P.R.A. secs. 4647 y 4672, sino en ciertas discrepancias con el proceso apelativo que se siguió en este caso. En particular, la mayoría aprovecha la ocasión para elaborar una nueva interpretación, de gran imprecisión técnica y en total contravención de nuestra jurisprudencia, sobre la procedencia del recurso de *certiorari* disponible para el Ministerio Público cuando se determina ausencia de causa probable en un procedimiento penal. Según el Tribunal, para que pueda utilizarse dicho recurso el Estado debe agotar primero el remedio de la vista en alzada provista en nuestro ordenamiento procesal penal.

De esta manera, la Opinión del Tribunal restringe innecesariamente la facultad del Ministerio Público para solicitar la corrección de un claro error de derecho del Tribunal de Primera Instancia. En vez de diseñarse mecanismos que aceleren los procedimientos penales en los tribunales, hoy se invoca una visión del recurso de *certiorari* que obliga al Ministerio Público a seguir un largo camino, a expensas de que en

el proceso el Estado pierda la oportunidad de utilizar los testigos necesarios para probar su caso.

Por entender que este asunto procesal no es novedoso ni mucho menos amerita revocar varios casos recientes en circunstancias que según la doctrina de *stare decisis* no cumplen con los requisitos para dejar sin efecto un precedente, respetuosamente disentimos.

## I.

En el presente recurso, Díaz de León nos solicita la revisión del mismo dictamen del Tribunal de Apelaciones que ya modificamos en Pueblo v. Sustache Sustache, *supra*. En ese caso nos circunscribimos a revisar la determinación de causa probable para el arresto de Sustache Sustache y su posible responsabilidad penal como cooperador en los incidentes relacionados con el asesinato del señor Cáceres Cruz, ocurrido en el Municipio de Humacao. Repasemos brevemente los incidentes que condujeron a esta bifurcación procesal.

En agosto de 2007, el Ministerio Público presentó denuncias separadas en contra de Pagán Cruz, por el delito de asesinato en primer grado, y en contra de Sustache Sustache y Díaz de León por el delito de asesinato en primer grado, en la modalidad de cooperador. El Tribunal de Primera Instancia, Sala Superior de Humacao, encontró causa probable para el arresto de Pagán Cruz y Díaz de León, por lo que señaló la vista preliminar para el mes siguiente.

No obstante, el foro primario no encontró causa probable para el arresto de Sustache Sustache, por lo que el Ministerio Público solicitó una vista en alzada bajo la Regla 6(c) de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Tras celebrarse la vista en alzada, el tribunal determinó nuevamente que no existía causa para arresto.

Posteriormente, se celebró la vista preliminar para acusar a Pagán Cruz y a Díaz de León. El Tribunal de Primera Instancia encontró causa probable para acusar a Pagán Cruz por el delito de asesinato en primer grado e infracción a la Ley de Armas, pero no encontró causa para acusar a Díaz de León por el delito de asesinato en primer grado, en la modalidad de cooperadora.

Inconforme, el Estado presentó dos recursos de *certiorari* ante el Tribunal de Apelaciones para que se revocara tanto la determinación de no causa contra Sustache Sustache en la vista de causa probable para arresto en alzada, como la determinación de no causa contra Díaz de León en la vista preliminar. El foro apelativo consolidó y expidió los recursos por entender que la controversia presentada en ambos era de estricto derecho y versaba sobre los mismos hechos. Además, sostuvo que la decisión del foro primario en el sentido de que no había causa probable en ambas

instancias estaba esencialmente desvinculada de los hechos del caso.[4]

Examinado el asunto, el tribunal apelativo revocó al foro de instancia en ambos recursos. En específico, determinó causa probable para acusar a Díaz de León y para arrestar a Sustache Sustache por el delito de asesinato en primer grado y el delito menor incluido de agresión, en grado de cooperadores, dado que los agentes cometieron la omisión de intervenir para evitar que Pagán Cruz agrediera de muerte al señor Cáceres. Además, determinó causa probable para el arresto de ambos por el delito de encubrimiento, en la modalidad de autores, debido a que le proveyeron información falsa al Ministerio Público sobre los sucesos relacionados al caso.

Al recibir en este Foro los recursos de *certiorari* de ambos imputados, decidimos atenderlos por separado. El 9 de julio de 2009, expedimos únicamente el recurso presentado por Sustache Sustache y modificamos la sentencia recurrida. En síntesis, confirmamos la determinación de causa probable para arresto emitida por el Tribunal de Apelaciones en

---

[4] De hecho, se desprende claramente de la resolución emitida por el Tribunal de Primera Instancia (Bermúdez Torres, J.) que no se encontró causa para acusar a Díaz de León precisamente por una interpretación de derecho. En particular, el juez de instancia hizo referencia al conocimiento necesario que debe tener un imputado para que responda a título de cooperador. Véase Transcripción de la Vista de Causa Probable para Acusar, 10 y 11 de septiembre de 2007, págs. 481-89.

contra de Sustache Sustache en cuanto al delito de asesinato en primer grado y el delito menor incluido de agresión, ambos en grado de cooperador. <u>Pueblo v. Sustache Sustache</u>, *supra*.

En esta ocasión, atendemos el recurso presentado por Díaz de León, el cual presenta la misma controversia de derecho y el mismo contexto fáctico. El Tribunal, sin embargo, revoca al foro apelativo bajo la premisa de que "el Ministerio Público abusó del mecanismo de *certiorari*, ya que tenía un remedio en ley que no utilizó". Op. del Tribunal, pág. 13. Según la mayoría, la diferencia fundamental entre ambos recursos estriba en el hecho de que en el caso de Sustache Sustache el Ministerio Público presentó el recurso de *certiorari* luego de que se celebrara una vista en alzada. En cambio, en el caso de Díaz de León, el Ministerio Público no esperó a que se celebrara la vista en alzada, sino que presentó el recurso *certiorari* luego de que se determinara no causa en la vista preliminar inicial.[5]

---

[5] Adviértase que tras determinar no causa contra Díaz de León en la vista preliminar, el juez Bermúdez Torres le expresó al Ministerio Público que podía acudir al Tribunal de Apelaciones mediante *certiorari* antes de que se realizara una vista preliminar en alzada, pues la controversia era de estricto derecho y, a su entender, las figuras ante su consideración se debían "comenzar a definir". Por ende, pautó la vista preliminar en alzada sujeto a que el Fiscal decidiera recurrir al tribunal apelativo con un recurso de *certiorari*. Véase Transcripción de la Vista de Causa Probable para Acusar, 10 y 11 de septiembre de 2007, *supra*.

La Opinión del Tribunal sorprende por demás. En esencia, ésta parte de la premisa de que el foro apelativo erró al aplicar la normativa procesal vigente en nuestra jurisdicción por las últimas décadas, ya que resuelve que se debía esperar a que se celebrara una vista en alzada antes de acogerse el recurso de *certiorari*. En ese proceso, la mayoría efectivamente convierte el recurso moderno del *certiorari* en un recurso extraordinario análogo al *injunction* e ignora por completo su desarrollo histórico en nuestro ordenamiento procesal. Así, pues, la norma pautada en este caso no tan solo es contraria a derecho, sino que desprecia la doctrina de *stare decisis* que rige en esta jurisdicción. Más aún, la nueva doctrina del Tribunal abona a la redundancia y a la ineficacia procesal, en detrimento de la responsabilidad del Estado y de los tribunales de atender con diligencia y prioridad las causas penales.

No puede haber duda alguna al respecto. La Opinión del Tribunal legisla mediante fíat judicial **un nuevo requisito jurisdiccional** en nuestro derecho procesal penal. De ahora en adelante, tras una determinación de ausencia de causa probable basada en un asunto de derecho, el Ministerio Público sólo puede recurrir al Tribunal de Apelaciones mediante un recurso de *certiorari* luego de agotar todos los remedios disponibles y después de haberse celebrado una vista en alzada. Es decir, por primera vez se le

aplica al recurso de *certiorari* en el contexto penal los estrictos principios en equidad del recurso extraordinario del *injunction*, el cual requiere que el peticionario demuestre la ausencia de un remedio adecuado en ley. 32 L.P.R.A. sec. 3523(4).

En definitiva, el razonamiento elaborado por el Tribunal no toma en consideración que el recurso de *certiorari* que se presentó en este caso no es el recurso clásico y vetusto del derecho común anglosajón, como parece sugerir la Opinión al reseñar la historia de esta figura. Más bien, en Puerto Rico el *certiorari* se ha convertido en **un recurso estatutario de carácter ordinario establecido por la Asamblea Legislativa** con unas características autóctonas para unos propósitos particulares, que claramente abarcan los incidentes procesales del caso de autos. Ello así, pues dicho recurso se desprendió de los contornos antiguos del derecho común anglosajón hace más de medio siglo. Veamos el trasfondo histórico del *certiorari* en nuestro medio y cómo este recurso ha enriquecido el derecho procesal puertorriqueño.

## II.

Tras el cambio de soberanía, el auto de *certiorari* se introdujo a nuestro ordenamiento en 1904 con la rigidez que históricamente caracterizaba esta figura en Estados Unidos y el Reino Unido. Véase Ley de 10 de marzo de 1904, también conocida como la "Ley para autorizar autos de *certiorari*". Dicho estatuto se

mantiene esencialmente vigente en nuestra jurisdicción, pues un texto análogo a éste constituye hoy día el Art. 670 del Código de Enjuiciamiento Civil. 32 L.P.R.A. sec. 3491. En lo pertinente al caso de autos, esta disposición establece que el auto de *certiorari* podrá ser concedido **"en aquellos casos en que el procedimiento adoptado no esté de acuerdo con las prescripciones de la ley**, y con objeto de terminar los procedimientos cuando el tribunal inferior rehusare hacerlo fundado en bases erróneas". *Íd.* (Énfasis nuestro).[6]

En ese sentido, es ilustrativo que las instancias sumamente restrictivas en que se podía expedir este recurso hasta mediados del siglo XX no surgían de un límite jurisdiccional impuesto por el texto de la ley, sino de la interpretación jurisprudencial que se le confirió a esta figura extraordinaria a la luz de su correlación histórica con la figura clásica del derecho común anglosajón. Por ejemplo, y a pesar de que no se establecía de tal forma en la propia ley, este Tribunal limitó su uso para revisar exclusivamente la falta de jurisdicción del tribunal recurrido o errores de estricto procedimiento. Fernández v. Corte, 6 D.P.R. 202 (1904). En virtud de ello, el recurso de *certiorari* no estaba disponible

---

[6] Véanse, además, D. Rivé Rivera, Recursos Extraordinarios, 2da ed., Programa de Educación Continua U.I.P.R., 1996, págs. 201-03; H. Sánchez Martínez, Práctica jurídica de Puerto Rico: Derecho Procesal Apelativo, Lexis, Inc., 2001, sec. 1801.

para revisar errores de derecho sustantivo u otras cuestiones incidentales del caso que se podrían atender mediante la vía ordinaria. Véanse Sepúlveda v. Corte, 40 D.P.R. 412 (1930); Manrique v. Diez, 22 D.P.R. 180 (1915); Mongil v. Castro, 19 D.P.R. 682 (1913); Axtmayer v. Aldrey, 14 D.P.R. 643 (1908).

De igual forma, otra limitación inflexible que surgía del propio desarrollo histórico de este recurso era su improcedencia cuando existía un remedio ordinario como la apelación. Ello era consecuencia de la concepción clásica del *certiorari* como un recurso extraordinario en Estados Unidos e Inglaterra, que sólo procedía si no existía un recurso en ley para revisar las decisiones inferiores como la apelación o la revisión. Puente v. Corte, 61 D.P.R. 674 (1973); Sánchez v. Corte, 60 D.P.R. 957 (1942).

Como acertadamente nos indica el profesor Rivé Rivera, en las etapas originarias del *certiorari* en Puerto Rico existía el derecho absoluto de apelar cualquier sentencia final civil o criminal. Ante esa realidad, "la apelación se consideraba el método natural e indispensable para revisar errores de los tribunales inferiores, **por lo que no podía sustituirse por el *certiorari***". D. Rivé Rivera, Recursos Extraordinarios, 1ra ed., Prog. de Educ. Cont. U.I.P.R., 1989, pág. 171; tomado de A. Calderón, Jr. y D. Rivé Rivera, Manual de Procedimientos Apelativos, U.I.P.R., 1987. (Énfasis nuestro).

Ahora bien, estas limitaciones rígidas a la figura ante nuestra consideración **fueron diáfanamente abandonadas por nuestra jurisprudencia hace más de medio siglo**. De hecho, como bien expresa el profesor Rivé Rivera, tales criterios inflexibles fueron descartados explícitamente por este Tribunal "en su doctrina y en su práctica". D. Rivé Rivera, *supra*, pág. 172. Específicamente, en <u>Pérez v. Tribunal</u>, 69 D.P.R. 4 (1948), resolvimos que el auto de *certiorari* procede para revisar **cualquier error de derecho** cometido por un tribunal inferior, con total independencia de si se trata de un error de derecho sustantivo o procesal. Al así resolver, repasamos la historia de dicho recurso en nuestro ordenamiento para concluir que las disposiciones pertinentes –y aún vigentes– del Código de Enjuiciamiento Civil **no establecían las limitaciones rígidas que fueron reconocidas por el Tribunal en las citadas Opiniones de la primera mitad del siglo XX**. En atención a ello, revocamos expresamente toda la jurisprudencia y la doctrina imperante que sostenía que el *certiorari* sólo procedía para revisar errores de procedimiento o de jurisdicción. *Íd.*, págs. 23-24.

En concreto, en dicha decisión este Tribunal partió de la premisa de que no era necesario seguir las pautas rígidas del derecho común anglosajón sobre esta figura y que debíamos elaborar un derecho autóctono sobre el particular al amparo de nuestra ley

positiva y los parámetros amplios de discreción que se reconocen en su propio texto. D. Rivé Rivera, *supra*, pág. 172. Posteriormente, este Tribunal siguió esa tendencia liberal basada estrictamente en el alcance amplio que le confirió la Asamblea Legislativa a este recurso. Véanse, por ejemplo, <u>Cubero Vélez v. Insurance Co. of P.R.</u>, 99 D.P.R. 748 (1971); <u>Morales v. Tribunal Superior</u>, 84 D.P.R. 123 (1961). Como consecuencia, la figura del *certiorari* se convirtió en un mecanismo típico y enriquecedor de nuestro ordenamiento jurídico.

Por otro lado, es cierto que siempre hemos sido enfáticos en cuanto a que el *certiorari*, al tratarse de un recurso discrecional, sólo debe proceder cuando no exista un recurso de apelación o cualquier otro recurso ordinario **que proteja eficaz y rápidamente los derechos del peticionario**. <u>Pueblo v. Tribunal Superior</u>, 81 D.P.R. 763 (1960). En ese sentido, la discreción del foro apelativo se debe ejercer con cautela y por razones de peso. No obstante, y a diferencia de lo sugerido por la Opinión del Tribunal, ello no significa que las leyes o la jurisprudencia de los últimos sesenta años prescriba un impedimento jurisdiccional, basado en la disponibilidad de otro remedio adecuado en ley, para que un tribunal apelativo expida un auto de *certiorari* a fin de revisar cualquier orden interlocutoria de un foro inferior.

En otras palabras, si el foro apelativo concluye que se cometió un error de derecho en una etapa preliminar del caso, y al amparo de su discreción entiende que el otro recurso disponible no protegerá los derechos del peticionario **de modo eficaz y rápido**, no existe obstáculo legal alguno para que proceda el auto de *certiorari* más allá de los términos estatuidos por la Ley de la Judicatura. 4 L.P.R.A. sec. 24 *et seq*. Así, pues, la autoridad del foro apelativo para emitir este recurso no depende de la disponibilidad de otro remedio adecuado en ley, pues el *certiorari* ya no es un recurso extraordinario análogo al *injunction* o al *mandamus*.[7]

Al igual que el profesor Rivé Rivera, consideramos que **"el carácter extraordinario del recurso ha desaparecido para convertirse en una figura jurídica novel y propia a nuestra realidad legal**, que nos lleva ahora a una definición más realista de este antiguo recurso apelativo". D. Rivé Rivera, *supra*, pág. 181. (Énfasis nuestro). La conversión autóctona de este recurso se perfeccionó aún más con la

---

[7] De hecho, la realidad es que las limitaciones inflexibles y rigurosas que aún caracterizan a estos dos recursos extraordinarios no tienen equivalencia funcional alguna en las leyes relacionadas con el *certiorari*. A diferencia del *certiorari*, los criterios rígidos del *injunction* que exigen al peticionario que demuestre daño irreparable o que carece de un remedio adecuado en ley surgen de la propia ley y no de la equidad. 32 L.P.R.A. secs. 3523(2), 3523(4); *cf.* Asociación de Vecinos Villa Caparra Sur v. Asociación de Fomento Educativo, Inc., 2008 T.S.P.R. 47, res. 13 de marzo de 2008.

aprobación posterior de la Ley de la Judicatura de 1994 y la Ley de la Judicatura de 2003.[8] En tales estatutos se fijaron términos definitivos para presentar el recurso, en muchos casos de naturaleza jurisdiccional, que tornaron su carácter en uno más ordinario aún de lo que ya era al amparo de la doctrina jurisprudencial. De esa forma, el *certiorari* se convirtió hace años en un remedio divorciado de los requisitos tradicionalmente asociados a la dicotomía entre ley y equidad, producto del derecho común anglosajón.

Aclarado lo anterior, examinemos el desarrollo de esta figura discrecional en el ámbito de nuestro derecho procesal penal.

**III.**

**A.**

En la primera mitad del siglo XX, autorizamos la expedición del *certiorari* en numerosos casos penales, tanto a solicitud del acusado como del Ministerio Público. Véanse, por ejemplo, Alcalá v. Corte, 66 D.P.R. 430 (1946); Fontaine v. Corte, 57 D.P.R. 139 (1940); Méndez Bas v. Corte, 44 D.P.R. 538 (1933). A su vez, en Rodríguez v. Corte, 60 D.P.R. 919, 920-21 (1942), expresamos que procedía el *certiorari*

---

[8] Específicamente, el Art. 4.006 de la Ley de la Judicatura de 2003 dispone que el Tribunal de Apelaciones podrá entender "mediante auto de *certiorari* expedido a su discreción, de cualquier resolución u orden dictada por el Tribunal de Primera Instancia". 4 L.P.R.A. sec. 24y.

"considerando que la cuestión cuya revisión se solicita es una de procedimiento a la vez que de jurisdicción... y que contra las órdenes impugnadas no existe recurso de apelación...". *Íd.*

No obstante, es preciso advertir que emitimos tales pronunciamientos antes de que revocáramos la norma restrictiva sobre los asuntos revisables mediante *certiorari* en Pérez v. Tribunal, *supra*. Así, pues, en los últimos cincuenta años hemos reconocido que el recurso de *certiorari* está disponible para revisar cualquier asunto de derecho, tanto procesal como sustantivo, independientemente de que exista el derecho eventual a apelar u otro remedio disponible. Claro está, lo determinante es que el remedio ofrecido sea rápido y eficaz, sin menoscabar los derechos de las partes.

En ese sentido, en Pueblo v. Tribunal Superior, 81 D.P.R. 763 (1960), analizamos el Art. 670 del Código de Enjuiciamiento Civil, *supra*, y su aplicación a resoluciones y providencias originadas en procesos penales. Partimos de la premisa de que la jurisprudencia de este Foro relativa al *certiorari* ha estado orientada "por el deseo de ofrecer un remedio rápido y eficaz, tanto en la esfera penal como en la civil, en situaciones en las cuales **por deficiencias de los remedios procesales** ordinarios esté en peligro la justicia o un importante interés social". *Íd*. (Énfasis nuestro). En vista de ello, permitimos que el

foro apelativo de aquel entonces revisara, a solicitud del Ministerio Público, el archivo de unas denuncias penales decretado por el foro primario a la luz de una controversia de derecho.[9]

Este trasfondo histórico nos conduce a la norma imperante sobre este recurso hasta el día de hoy, particularmente en lo relativo a su disponibilidad para solicitar la revisión de una determinación de no causa probable –tanto para arresto como para acusar– emitidas por el Tribunal de Primera Instancia.

**B.**

En lo pertinente a este caso, en <u>Pueblo v. Tribunal Superior</u>, 95 D.P.R. 412 (1967), resolvimos mediante Resolución que una determinación **en los méritos** de un Juez Superior sobre la inexistencia de causa probable no era revisable mediante el auto de *certiorari*. En específico, concluimos que tales determinaciones no son decisiones de un tribunal, sino de un magistrado que ejerce unas funciones particulares de acuerdo con las Reglas de Procedimiento Criminal. Por ende, en ese caso partimos de la premisa de que **los méritos** de la determinación del magistrado sobre la inexistencia de causa probable no eran revisables mediante *certiorari*. Véase, además,

---

[9] En ese caso, expresamos que "[n]o hay razón alguna de peso por la cual deba negársele al Tribunal Superior el ejercicio de ese poder, sujeto, naturalmente, a la autoridad revisora nuestra". <u>Pueblo v. Tribunal Superior</u>, *supra*.

Pueblo v. Tribunal Superior, 97 D.P.R. 241, 245 (1969).

Posteriormente, en Pueblo v. Cruz Justiniano, 116 D.P.R. 28 (1984), distinguimos la interpretación restrictiva que se desprendía de dicha Resolución. En particular, aclaramos que aunque una determinación en los méritos no era revisable, **"cualquier otra determinación de derecho sí puede ser revisada mediante el recurso de *certiorari*"**. *Íd.,* pág. 30 (Énfasis nuestro).[10] Ciertamente, una determinación de no causa probable que verse sobre un asunto de derecho se incluye en los preceptos revisables contemplados por los estatutos y la jurisprudencia relacionada al auto de *certiorari*.

Hasta hoy, este Tribunal se ha adherido fielmente al texto de la Ley de la Judicatura y del Art. 670 del Código de Enjuiciamiento Civil para permitir la revisión de una determinación de causa probable para arresto o para acusar solicitada por el Ministerio Público, siempre y cuando el asunto planteado sea una controversia esencialmente de derecho. En ese sentido, el foro apelativo puede revisar tal determinación

---

[10] Según el desarrollo liberal del recurso de *certiorari* en la segunda mitad del siglo XX, explicamos en Cruz Justiniano que la determinación de no causa en Pueblo v. Tribunal Superior, 95 D.P.R. 412 (1967), no fue revisable porque el Ministerio Público no planteó en ese caso algún asunto de derecho, sino que solicitó una revisión en torno a los hechos ya adjudicados. Por otro lado, en Pueblo v. Opio Opio, 104 D.P.R. 165 (1975), revocamos a Pueblo v. Tribunal, *supra*, en la medida en que caracterizaba al magistrado en la vista de causa como una parte interesada.

independientemente de que se haya agotado o no la vistas en alzada contempladas por la Regla 6(c) y la Regla 24(c) de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Véanse, por ejemplo, Pueblo v. Sustache Sustache, *supra*; Pueblo en int. del menor K.J.S.R., 2007 T.S.P.R. 194, res. 6 de noviembre de 2007; Pueblo v. Aponte Nolasco, 167 D.P.R. 578 (2006); Pueblo v. Rivera Alicea, 150 D.P.R. 495 (2000); Pueblo v. Colón Mendoza, 149 D.P.R. 630 (1999).[11]

Ahora bien, al "reexaminar" la normativa antes expuesta, en este caso el Tribunal revoca nuestras decisiones recientes en Pueblo v. Aponte Nolasco, *supra*, y Pueblo v. Colón Mendoza, *supra*, en la medida en que permiten obviar la vista en alzada –tanto la vista de causa probable para arresto como la vista preliminar– antes de acudir mediante *certiorari* al Tribunal de Apelaciones si la controversia trata de una cuestión de derecho. Discrepamos de este curso de acción, pues no se ajusta al desarrollo y al dinamismo histórico del recurso de *certiorari* en nuestro ordenamiento.

**IV.**

**A.**

---

[11] Véanse, además, E. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Ed. Forum, 1995, t. III, págs. 46-47, 105-06; O. Resumil Ramírez, Práctica Jurídica de Puerto Rico: Derecho Procesal Penal, secs. 6.12, 15.13.

En Pueblo v. Colón Mendoza, *supra*, aplicamos expresamente la normativa de Cruz Justiniano a la revisión de inexistencia de causa probable para arresto en virtud de la Regla 6(c) de Procedimiento Criminal, *supra*. A la luz de los incidentes procesales narrados en ese caso, aún no se había celebrado ni solicitado la vista en alzada cuando el Ministerio Público presentó el recurso de *certiorari* al foro apelativo para solicitar la revisión de la determinación de no causa emitida por el foro primario. Al expedir el recurso y atender la controversia de derecho presentada por el peticionario, no encontramos que fuera obstáculo o impedimento alguno el hecho de que no se había celebrado una vista en alzada antes de que se acudiera mediante *certiorari* al Tribunal de Apelaciones. Tal aspecto procesal, sencillamente, no fue objeto de discusión en esa ocasión.

Posteriormente, en Pueblo v. Aponte Nolasco, *supra*, se suscitó una controversia que nos condujo a discutir directamente el asunto atendido por la Opinión del Tribunal. En aquella ocasión, el Ministerio Público acudió mediante recurso de *certiorari* ante el foro apelativo para revisar la determinación de no causa probable para acusar realizada por el Tribunal de Primera Instancia. Aunque la controversia presentada era evidentemente de estricto de derecho, en decisión dividida el Tribunal

de Apelaciones (Martínez Torres, J. ponente, y Hernández Torres, J.; Brau Ramírez, J., voto disidente), se declaró sin jurisdicción por entender que el recurso disponible era la vista preliminar en alzada, no el recurso de *certiorari*.[12]

No obstante, en Aponte Nolasco revocamos la resolución de dicho panel del Tribunal de Apelaciones por entender que era claramente errónea y contraria al desarrollo histórico del *certiorari* en esta jurisdicción, toda vez que la controversia presentada en esa ocasión trataba sobre un asunto de estricto derecho. Reiteramos entonces que este mecanismo está disponible para corregir errores de derecho independientemente de su naturaleza procesal o sustantiva, tal como lo habíamos aclarado hacía más de medio siglo en Pérez v. Tribunal, *supra*. A su vez, despejamos toda duda en cuanto a su disponibilidad para la revisión de determinaciones de causa probable y señalamos expresamente que se **"permite revisar tanto las determinaciones de derecho realizadas en la vista original como las realizadas en la vista en alzada"**. Pueblo v. Aponte Nolasco, *supra*, pág. 583.

---

[12] En específico, el Tribunal de Apelaciones adujo que de expedirse el auto, "se desnaturalizaría la naturaleza del recurso de *certiorari* al obviarse un procedimiento rápido y efectivo dispuesto por ley: la vista en alzada que contempla la Regla 24(c) de Procedimiento Criminal, *supra*". Pueblo v. Aponte Nolasco, Caso Núm. KLCE 200400775, res. 7 de julio de 2004.

A pesar de la claridad de la norma antes reseñada, según la Opinión del Tribunal las decisiones de Aponte Nolasco y Colón Mendoza no son cónsonas con otros casos en los que supuestamente "se reconoció el derecho que asiste al Ministerio Público de utilizar el mecanismo procesal extraordinario del *certiorari* **después de agotar el remedio de la vista en alzada".** Op. del Tribunal, pág. 11 (Énfasis nuestro). En específico, se refiere a que supuestamente limitamos el alcance del *certiorari* a que primero se agotara la vista en alzada en Pueblo en int. del menor K.J.S.R., *supra*; Pueblo v. Rivera Alicea, *supra,* y Pueblo v. Cruz Justiniano, *supra*.

Tras un análisis detenido y sosegado de dicha jurisprudencia, sin embargo, no encontramos limitaciones ni contradicciones normativas en el *ratio decidendi* de cada uno de esos casos en cuanto a la disponibilidad del *certiorari* para revisar las determinaciones de causa probable en casos penales. Tampoco encontramos ahora razón alguna que justifique favorecer un retroceso histórico en el desarrollo de este recurso, para limitar la facultad del Tribunal de Apelaciones para resolver controversias noveles de derecho como las suscitadas en este caso y en Pueblo v. Sustache Sustache, *supra*.

En realidad, las Opiniones a las que la mayoría hace referencia para sustentar su posición versaban sobre la disponibilidad del recurso de *certiorari*

**luego de una vista en alzada.** No se puede deducir de nuestras expresiones en tales circunstancias procesales que el auto de *certiorari* no esté disponible para el Ministerio Público si no agota primero la vista en alzada correspondiente. Todo lo contrario, pues en nuestra reciente Opinión en Pueblo en int. del menor K.J.S.R., *supra*, citada con aprobación por el Tribunal en este caso, expresamos que "a través de dicho mecanismo se puede solicitar la revisión de errores de derecho, tanto procesales como sustantivos, que alegadamente hayan sido cometidos en la vista de causa probable para arresto, **en la vista preliminar inicial** y en la vista preliminar en alzada". *Íd. (*Énfasis nuestro).

**B.**

De otra parte, es muy sorprendente que el Tribunal decida que el desarrollo jurisprudencial y doctrinal de esta figura en nuestro ordenamiento amerita descartar dos precedentes de este Foro de hace apenas tres y diez años. Al examinar la doctrina de *stare decisis*, hemos reiterado en múltiples ocasiones que cuando una controversia de derecho ha sido deliberadamente resuelta luego de argumentos solemnes, la norma pautada no debe ser variada **a menos que su resolución haya sido patentemente equivocada, por lo cual sería irrazonable e inherentemente injusto reafirmar dicha decisión**. González Natal v. Merck, Sharp & Dohme Química de P.R., Inc., 166 D.P.R. 659,

687 (2006) (Op. de Conformidad); San Miguel & Cía. v. Guevara, 64 D.P.R. 966, 974 (1945).

Como se reconoce en la Opinión del Tribunal, la excepción a la doctrina de *stare decisis* para justificar la revocación de un precedente se ha aplicado cuando concurren tres criterios, a saber: (1) la decisión anterior era claramente errónea, (2) los efectos de la decisión sobre el resto del ordenamiento son adversos, y (3) la cantidad de personas que confían en la decisión es limitada. Véanse Pueblo v. Camacho Delgado, 2008 T.S.P.R. 174, res. 27 de octubre de 2008; U.S. v. Reliable Transfer Co., 421 U.S. 397 (1975); William N. Eskridge, Jr., Overruling Statutory Precedents, 76 Georgetown L.J. 1361 (1988).

En este caso, la mayoría no ha podido articular adecuadamente cómo se ha cumplido con tan siquiera uno de estos requisitos para dejar sin efecto una norma pautada por este Tribunal, según la doctrina de *stare decisis*. Como hemos demostrado en la discusión que antecede, la normativa expuesta en Aponte Nolasco y Colón Mendoza no era claramente errónea, sino que en ambos casos se aplicaron de manera fidedigna y práctica los estatutos y la jurisprudencia relacionada al recurso de *certiorari*. Del mismo modo, dicha realidad procesal tampoco ha tenido efectos adversos sobre el ordenamiento procesal vigente, ni mucho menos se trata de decisiones de poca confiabilidad en la profesión jurídica o en el resto del país. Más bien,

lo único que ha ocurrido desde que se resolvieron ambos casos es un cambio en la composición de este Tribunal.

De hecho, resulta ilustrativo que la Opinión Disidente del ex Juez Asociado señor Rebollo López en el ahora revocado Pueblo v. Aponte Nolasco, *supra*, versó sobre el asunto de derecho presentado por el Estado y en nada se relacionó con la disponibilidad del *certiorari* para acudir al foro apelativo en ese caso. También nos llama la atención que en el Análisis del Término 2005-06 de este Tribunal, publicado en el Volumen 76 de la Revista Jurídica de la Universidad de Puerto Rico, el profesor Chiesa Aponte y el licenciado León Pérez expresaron que la norma sobre el uso del *certiorari* para revisar las determinaciones de derecho luego de la vista original **"no es novedosa"**. E. Chiesa Aponte y E. León Pérez, Derecho Procesal Penal, en Tribunal Supremo de Puerto Rico: Análisis del Término 2005-06, 76 Rev. Jur. U.P.R. 617, 625 (2007).

Así pues, todo parece indicar que la cantidad de personas que no confían en las decisiones hoy revocadas se limita a una mayoría de los miembros de este Tribunal. A nuestro juicio, la nueva norma pautada hoy por la Opinión del Tribunal es palpablemente errónea y contraria al mandato legislativo sobre la figura del *certiorari* y su desarrollo jurisprudencial por más de sesenta años. Es esta nueva rigidez del recurso, que surge del

revisionismo histórico esbozado por la Opinión del Tribunal, la que tendrá efectos adversos en nuestro ordenamiento procesal.

Adviértase que el razonamiento elaborado por la Opinión del Tribunal para revocar tales precedentes pasa totalmente por alto que la segunda vista preliminar no es una apelación de la primera, sino que es una vista independiente, separada y distinta. Es decir, a diferencia del recurso de *certiorari*, el propósito de la vista preliminar en alzada que contempla la Regla 24(c) de Procedimiento Criminal, *supra*, no es revisar una cuestión de derecho suscitada en la vista inicial, **sino pasar juicio nuevamente sobre los hechos del caso**. Pueblo v. Cruz Justiniano, *supra*, pág. 30; Pueblo v. Tribunal Superior, 96 D.P.R. 237 (1968). Ante ese supuesto, no encontramos razón alguna por la cual el Ministerio Público deba esperar a celebrar una vista preliminar en alzada, para que se adjudiquen nuevamente los hechos, antes de solicitar la revisión del asunto novel de derecho sobre la figura de la comisión por omisión y la cooperación presentado tanto aquí como en Pueblo v. Sustache Sustache, *supra*. Es decir, la controversia de este recurso versa sobre un asunto de estricto derecho que no requiere una nueva adjudicación de los hechos en otra etapa procesal para atenderla.

A base del tecnicismo procesal invocado por la mayoría, el cual le requiere al Ministerio Público

agotar el recurso de la vista en alzada aunque la controversia imperante sea esencialmente sobre una figura nueva y compleja en nuestro ordenamiento jurídico penal, se le impone una carga onerosa al Estado para llevar los casos ante los tribunales del país. Sin duda alguna, dicha redundancia procesal **no constituye el mecanismo ordinario eficaz y rápido al que se refiere la doctrina moderna del *certiorari*** para limitar la discreción de los foros apelativos. Pérez v. Tribunal, *supra.* Ello se torna más evidente aún, al tomar en consideración que los hechos adjudicados por el Tribunal de Primera Instancia en la vista preliminar original celebrada en contra de Díaz de León eran más que suficientes para atender y dilucidar el asunto de estricto derecho que esgrimió el Ministerio Público en el controvertido recurso de *certiorari*. En fin, la realidad fáctica y procesal del caso de autos presentaba razones de peso más que suficientes para prescindir de una vista preliminar adicional que sería claramente innecesaria.

Por último, resulta sumamente ilustrativo y pertinente a este caso recordar las expresiones de este Tribunal hace más de sesenta años en Pérez v. Tribunal, *supra*, cuando se le confirió al recurso de *certiorari* los contornos modernos que hoy el Tribunal deja sin efecto. En particular, afirmamos que al resolver que

> tenemos que echar a un lado los casos que han inyectado en la ley **restricciones que no aparecen de su texto**, no estamos 'legislando judicialmente'. Por el contrario, quitar los grilletes que encadenaban el estatuto y con ello restituirle su forma prístina, si algo hace es dejar sin efecto anterior 'legislación judicial' de este Tribunal. <u>Pérez v. Tribunal</u>, *supra*, pág. 23. (Énfasis nuestro).

A pesar de estos pronunciamientos que emitimos hace más de medio siglo, este Tribunal ahora decide dar marcha atrás y revisar por fíat judicial el desarrollo autóctono del recurso de *certiorari* en nuestra jurisdicción, con el único fin de imponerle grilletes a esta figura procesal y limitar el acceso de una parte a los tribunales apelativos, en este caso, el Ministerio Público. Sin duda, estamos ante la misma concepción formalista que produjo la reciente decisión de <u>Crespo Quiñones v. Santiago Velázquez</u>, 2009 T.S.P.R. 125, res. 31 de julio de 2009, en la cual se invocó un "mandato legislativo" inexistente para privar a este Tribunal de su autoridad para resolver los casos de la forma más eficiente y eficaz posible. Es evidente que con semejante proceder no podemos estar de acuerdo.

**V.**

En atención a que hubiésemos atendido la controversia de derecho presentada por el Ministerio Público ante el Tribunal de Apelaciones mediante su recurso de *certiorari*, exponemos brevemente nuestro

criterio al respecto. Dicho razonamiento, claro está, lo elaboramos conforme a la normativa que pautamos hace unas semanas en Pueblo v. Sustache Sustache, *supra*.

En este caso, la prueba desfilada en la vista preliminar apunta a que el deber jurídico que le imponía a Díaz de León la obligación de actuar afirmativamente en protección de los derechos civiles de la ciudadanía se activó una vez Pagán Cruz comenzó a agredir al señor Cáceres Cruz mientras intentaba arrestarlo sin causa aparente, con la anuencia y participación previa de ésta y de Sustache Sustache. De hecho, del expediente surge que Díaz de León fue quien inició el intento de arrestar al señor Cáceres Cruz, y cuando se le inquirió sobre el motivo del arresto, contestó "porque lo voy a arrestar". Véase Apéndice del recurso, pág. 182.

Asimismo, del testimonio del agente investigador en la referida vista preliminar se desprende que la detención inicial comenzó cuando Díaz de León escuchó desde el vehículo de la Policía que el señor Cáceres Cruz expresó "siempre la misma mierda con los cabrones guardia [sic]". En vista de ello, Díaz de León le indicó a su compañero, Pagán Cruz, "que le están faltando el respeto [sic] que los trata de mierda y de cabrones". Apéndice, pág. 309. A su vez, la prueba presentada apunta a que ésta nada hizo para impedir

los actos que desembocaron en la muerte del señor Cáceres Cruz.

En atención a esos sucesos fácticos, es evidente que tanto Díaz de León como el agente Sustache Sustache tenían el mismo deber de intervenir con Pagán Cruz para impedir y evitar el uso de la fuerza excesiva que finalmente resultó en la muerte del señor Cáceres Cruz. Dicha conclusión es inevitable al tomar en consideración el derecho pautado con relación a Sustache Sustache a base de los mismos hechos en Pueblo v. Sustache Sustache, *supra*. La prueba presentada en la vista preliminar parece indicar que esta agresión ocurrió frente a ambos, quienes observaron los sucesos y decidieron deliberadamente no intervenir para detener a su compañero, aun cuando éste estaba violando los derechos civiles de un ciudadano.

Por consiguiente, la prueba desfilada hasta el momento en contra de Díaz de León tiende a indicar que la agresión y muerte del señor Cáceres Cruz configuró un delito de resultado cuya comisión aparentemente fue auxiliada por el incumplimiento con su deber de garante como miembro de la Policía. En su posición de garante frente a la ciudadanía allí reunida, ésta -al igual que Sustache Sustache- tenía la responsabilidad clara de auxiliar a la víctima. Según nuestro análisis en Pueblo v. Sustache Sustache, *supra*, todo ello es suficiente para determinar que existía causa probable

para acusarla por el delito de asesinato en primer grado y el delito menor incluido de agresión al amparo de las figuras del cooperador y de la comisión por omisión incorporadas a nuestro ordenamiento con la aprobación del Código Penal de 2004, *supra*.

En fin, no podemos unirnos a la Opinión del Tribunal en el caso de epígrafe. Ésta no tan solo revoca una norma clara de nuestro derecho procesal penal, sino que ordena la celebración de otra vista preliminar innecesaria en detrimento de la economía procesal en este caso. Además, y en el proceso de revisar los criterios para expedir un auto de *certiorari*, el Tribunal legisla desde este estrado apelativo un nuevo requisito jurisdiccional y perpetra un retroceso histórico en la evolución de esa figura rígida y anticuada que ya habíamos superado hace más de medio siglo.

En vista de que el proceso apelativo seguido en este caso se realizó conforme al ordenamiento procesal vigente y dentro de los parámetros de discreción que circunscriben el recurso de *certiorari*, hubiésemos confirmado la sentencia recurrida del mismo modo que lo hicimos en Pueblo v. Sustache Sustache, *supra*.

Por todo lo anterior, disentimos respetuosamente del curso de acción seguido por la mayoría.

**VI.**

A modo de epílogo, una reflexión. En momentos en los que la sociedad puertorriqueña sufre el embate de

una despiadada ola criminal, poco bien haríamos si en vez de interpretar nuestras leyes en armonía con el contexto social en el que vivimos, le damos la espalda a esa realidad para adoptar normas que son el producto de un mero ritualismo procesal.

A nuestro juicio, ese es precisamente el error de la Opinión que emite el Tribunal en el caso ante nuestra consideración. En su afán por pautar lo que, a su entender, constituye el derecho correcto sobre la utilización del recurso de *certiorari* en Puerto Rico, el Tribunal le quita al Ministerio Público una herramienta de acceso directo a los foros apelativos para cuestionar los errores de derecho que se hayan cometido en una determinación de no causa probable en la vista preliminar.

Como jueces, debemos ser conscientes de que todas nuestras decisiones tienen consecuencias, no sólo para las partes, sino para la sociedad misma en la que nos desenvolvemos. Esta decisión tiene el efecto de prolongar más los litigios en los tribunales y, lamentablemente, de extender la espera de todos los que aguardan porque se haga justicia. Si consideramos que los hechos objeto de este caso ocurrieron el 11 de agosto de 2007, y que la vista preliminar contra Díaz de León se celebró el 28 de agosto de 2007, la Opinión del Tribunal no tiene otro significado que convertir dos años de trámite judicial en tiempo perdido.

Afortunadamente, el error que comete la mayoría puede remediarse legislativamente. Confiemos, pues, en que próximamente se restablezca la disponibilidad del recurso de *certiorari* para revisar determinaciones de no causa probable, sin importar la etapa procesal en la que se encuentre el caso. Así se le devuelve a nuestro ordenamiento procesal una herramienta que por décadas le ha servido bien a la justicia en Puerto Rico.

Federico Hernández Denton
Juez Presidente